## MURPHY v. AMERICAN ICE CO.

(Supreme Court, Appellate Division, First Department. February 2, 1912.)

1. MASTER AND SERVANT (§§ 278, 281*)—INJURIES TO SERVANT—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

   In an action against the decedent's employer for the killing of the deceased by falling from a scaffold, where there were no eyewitnesses, evidence *held* wholly insufficient to show any negligence on the part of the defendant, or freedom from contributory negligence on the part of decedent.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954–972, 977, 987–996; Dec. Dig. §§ 278, 281.*]

2. DEATH (§ 75*)—CONTRIBUTORY NEGLIGENCE—PROOF OF.

   While in the case of the death of an injured party, where there are no eyewitnesses, slight evidence may suffice, there must be some fact or circumstance proven from which it may be inferred that the deceased exercised due care.

   [Ed. Note.—For other cases, see Death, Cent. Dig. §§ 93, 95; Dec. Dig. § 75.*]

Appeal from Trial Term, New York County.

Action by Mary E. V. Murphy, administratrix, against the American Ice Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and LAUGHLIN, MILLER, McLAUGHLIN, and DOWLING, JJ.

Frank A. Gaynor, for appellant.

P. J. Dobson, for respondent.

DOWLING, J. The decedent, John Murphy, was employed by defendant as a carpenter, and on October 31, 1906, at about 8 a. m., was performing the duties of his employment in the ice plant of defendant at Flatbush avenue and East Thirty-Second street, in the borough of Brooklyn, city of New York. His work required him to be upon a scaffold, which at this time had reached a height of some 40 feet from the floor, and from which the carpenters were engaged in sheathing the interior wall of the building. This scaffold was constructed by first placing uprights, each 4 inches by 4 inches and 20 feet in length, on the floor at distances of 10 feet or less and about 3 feet from the side wall. As the advancing work required a greater height, other uprights were set upon the first ones, bolted thereto, and with plasters on all sides, so that the structure was rigid and practically continuous. Crosspieces were run from the uprights to the side wall at the desired levels, nailed to the uprights, and with projections allowed to remain thereover to prevent any danger of splitting, and secured on the other side by being nailed on steps of wood, which in turn were nailed to the wall of the building. Upon the crosspieces were laid two planks, side by side, with an interval of an inch or two between them, and each 2 inches by 12 inches and 12 feet long, thus extending at each end beyond a crosspiece. Be-

tween the wall and the first plank was a space of from 8 to 12 inches, to allow of the workmen's sitting on the plank while working, and beyond the second plank was a guard rail, 3 feet above a point 6 or 8 inches beyond that plank. The scaffold was composed of sound and new wood. At the time in question Murphy and a fellow workman named Aber were engaged in carrying a piece of sheathing along the upper platform of the scaffold; each holding one end of the timber, Aber was walking backward, and Murphy forward. While about to put down the timber, Aber bent over, and, feeling a jar, looked around and saw Murphy falling head first from the platform, under the guard rail, still clutching the timber. He fell to the ground, and sustained injuries causing his death. No part of the scaffolding gave way, or was injured or broken in any way, save some guard rails on the lower level, which were broken by the body in its fall. Plaintiff has recovered a judgment herein, from which this appeal is taken; and defendant contends that there is an entire absence of proof of any negligence upon the part of defendant, and as well of freedom from contributory negligence upon the part of decedent.

[1, 2] Both these contentions are well founded. While it is true that in the case of the death of an injured party, where there are no eyewitnesses of the occurrences, slight evidence may suffice, there must still be some fact or circumstance proven from which an inference may be drawn that the deceased exercised due care. Here the cause of decedent's fall is totally unexplained. It does not appear that he tripped over anything, or that there was anything over which he could possibly have tripped. The planking over which he was walking was not uneven, nor were there any defects therein. He was walking forward, holding a timber, which he still clutched as he fell. He fell under the rail, not against it. Nothing connected with the scaffolding broke, yielded, or overturned. All the facts proven were as consistent with carelessness in walking, tripping over his own foot, a suddenly turned ankle, or an attack of dizziness, as with any other explanation. It is in evidence, from the cross-examination of plaintiff's witnesses Aber and Rodgers, that he had complained that very morning of having some trouble with his leg, and being afraid "it would go back on him."

Nor was there any sufficient proof of negligence upon the part of defendant. The scaffold was constructed of new material. There is no attempt to show that it was improperly constructed in any way, or that it could have been more safely built, save in the particular of the guard rail, which it was claimed should have been directly over the edge of the planking. This is not testified to by any competent expert, nor is the position of the guard rail shown to have been the proximate cause of the accident. There is evidence that Murphy was consulted about the erection of the scaffolding, made some suggestions about it, and said he wanted no guard rail, as it would be in the way and a nuisance, because the boards would have to be brought up either over or under it. Nor did the labor law as then in force require specifically that a guard rail should be placed upon a scaffold built upon the floor of a building. The provision in question was as follows:

"A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged. Scaffolding or staging swung or suspended from an overhead support, more than twenty feet from the ground or floor, shall have a safety rail of wood, properly bolted, secured and braced, rising at least thirty-four inches above the floor or main portions of such scaffolding or staging and extending along the entire length of the outside and the ends thereof, and properly attached thereto, and such scaffolding or staging shall be so fastened as to prevent the same from swaying from the building or structure." Laws 1897, c. 415, § 18.

In the case at bar, the proof does not bring it within the provisions of the first sentence, and the second sentence does not apply, for this was not a swinging or suspended scaffold, but a fixed and supported one. The requirements before quoted were re-enacted in the labor law (chapter 31, Consol. Laws 1909, being chapter 36, Laws 1909), but have since been amended so as to compel the providing of a guard rail for scaffolds erected with stationary supports when they are more than 20 feet from the ground or floor. Laws 1911, c. 693.

The judgment and order appealed from must therefore be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.